United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>Mark Anthony Grimes,<br>    Defendant. | No. SA-14-CR-790 DAE |

**Government's Response to Defendant's Sentence Reduction Motion**

Defendant Mark Anthony Grimes is currently serving a prison term based on his conviction for trafficking in child pornography.  Relying on the COVID-19 pandemic, he has moved under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment.

For many reasons, this Court should deny Defendant's motion.  First, defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction.  Second, Defendant has failed to show he is not a danger to any other person or the community.  Third, Defendant has failed to show that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.  This Court should deny Defendant's alternative request for an order directing BOP to place him in home confinement.

**Background**

**A.    Defendant's Offense, Criminal History, and Sentence**

In 2017, Defendant was convicted of Distribution of Child Pornography in violation of Title 18 United States Code, Section 2252A(a)(2).  (Judgment, ECF No 66.)  The defendant's IP address was flagged by the San Antonio Division of the FBI as being used to traffic large amounts of child pornography. (PSR ¶10). The FBI was able to download roughly a thousand files directly from the defendant that depicted prepubescent children, including infants, being sexually abused and exploited. (*Id*.) During the execution of a search warrant at the defendant's home in San Antonio, Texas, FBI agents seized a desktop computer that contained over 3800

images depicting the graphic sexual exploitation of children, including infants and toddlers. (PSR ¶ 14.)

Defendant admitted having an interest in toddler pornography files, to include babies and infants that are tied and bound (PSR ¶ 13), and an overpowering sexual arousal in viewing children between the ages of 5 and 6 years old who are receiving oral sex from an adult male. (*Id*.) The defendant also confessed that when he is in public places like the mall, he has visual attractions to the underage children around him. (*Id*).

The defendant had been accessing child sexual abuse material for 16 years, used a variety of file sharing programs in order to obtain the material, and knew he was sharing the material with others who share a sexual interest in children. (PSR ¶ 12.)

Defendant pleaded guilty to one count of Distribution of Child Pornography. (PSR ¶ 2.) Based on Defendant's conduct and criminal history, the guideline range was 210 to 240 months. (PSR ¶ 56.) This Court determined that a prison term of 185 months was sufficient but not greater than necessary. (Judgment 2, ECF No. 66.)

### B.    Defendant's Current Term of Imprisonment

Defendant has now served 36 months, or 20%, of his current prison term. He is not scheduled for release until August of 2030. *See* Fed. Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited September 16, 2020.)

Defendant is currently housed at FMC Fort Worth in Fort Worth, Texas.  FMC Fort Worth is an administrative security federal medical center.  *See* https://www.bop.gov/locations/ institutions/ftd /, accessed September 10, 2020. FMC Fort Worth houses 1,284 male inmates. *See Id.*  At the time of filing, BOP reported 52 inmates and 9 staff members testing positive for COVID-19 at  FMC Fort Worth. *See* Fed. Bureau of Prisons, *COVID-19 Cases*, COVID-19 Coronavirus (*September 17, 2020)* https://www.bop.gov/coronavirus/.  Although 12 inmates there have died of COVID-19, 576 inmates and 6 staff members have recovered. *Id.*

### C. BOP's Response to COVID-19

In response to the COVID-19 pandemic, BOP has modified its operations plan to protect the health of inmates at BOP facilities. *See* Fed. Bureau of Prisons, BOP Implementing Modified Operations, at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 10, 2020.) Under this plan, BOP is limiting inmate movement to maximize social distancing; screening inmates involved in certain essential group activities; isolating and testing symptomatic inmates potentially exposed to the virus; and quarantining asymptomatic inmates potentially exposed. BOP is also testing new inmates and limiting movement between facilities (with exceptions for needed medical treatment, legal proceedings, and reducing overcrowding). BOP has suspended official staff travel and training (except for relocation travel and training for new staff) and has limited contractors to those providing essential services. Screening for staff and contractors entering BOP facilities includes temperature checks and self-reporting.

BOP is also designating prisoners who pose the least threat to the community to serve their terms of imprisonment in home confinement. Home confinement is not a sentence reduction; instead, BOP designates an inmate's residence as the place he or she will serve a term of imprisonment. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541. Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), BOP may now "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 516 (2020). The Attorney General has directed that BOP prioritize and maximize transfers to home confinement of inmates vulnerable

to COVID-19 in appropriate circumstances.[1] BOP is devoting all available resources to carrying out that directive. As of this filing, BOP has transferred 7,639 inmates to home confinement. See Fed. Bureau of Prisons, *COVID-19 Home Confinement Information*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited September 16, 2020).

According to BOP, Defendant has not been considered for home confinement as he has only served 20% of his sentence.  He will be deemed ineligible because of his instant offense being a sex conviction. Title 34 U.S.C. § 60541 excludes certain offenders from home confinement eligibility, including any offender who is serving a term of imprisonment based on conviction for "any . . . sex offense (as defined in section 20911(5) of this title)." 34 U.S.C. § 60541(g)(5)(A)(ii), (D)(i). In turn, § 20911(5) defines "sex offense" to include "a Federal offense . . . under . . . chapter . . . 110 (other than section 2257, 2257A, or 2258) . . . of Title 18." 34 U.S.C. § 20911(5). Chapter 110 of Title 18 includes violations of § 2252A(a)(2), distribution of child pornography, the specific statute under which Defendant was convicted. *See* ECF No. 66. Nothing in the CARES Act or either of the Attorney General's memos changed this statutory bar. In fact, the Attorney General reaffirmed that inmates convicted of sex offenses were ineligible for priority consideration under the expanded home confinement criteria. *See* Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.  Accordingly, Defendant

---

[1] *See* Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download; Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The March 26 memorandum directs BOP to consider the totality of the circumstances, including the following non-exhaustive list of factors: the age and vulnerability of the defendant to COVID-19; the security level of the defendant's facility; the defendant's conduct in prison; BOP's assessment of the defendant's recidivism risk; whether the defendant has a verifiable re-entry plan that prevents recidivism, maximizes public safety, and would result in a lower risk of contracting COVID-19; and the defendant's crime of conviction. BOP will not designate a defendant to home confinement if doing so would likely increase the risk of contracting COVID-19.

is ineligible for the BOP home confinement program, even with the modifications set forth in the CARES Act and Attorney General Memoranda.

### D.   Administrative Requests and Consideration

On May 7, 2020, Defendant submitted an administrative request for a sentence reduction. *See* Ex. A (Administrative Request). There is no information indicating the Warden has taken any action on his request, therefore given the time frame, he has exhausted administrative remedies.

### E.   Defendant's Current Motion

On August 5, 2020, Defendant filed a motion with this Court seeking a sentence reduction under § 3582(c)(1)(A). (Def. Mot. ECF No. 80.) He argues that his medical conditions make him particularly vulnerable to becoming seriously ill from COVID. Specifically, he asserts his asthma, weakened immune system, seizures and hypertension put him at greater risk due to COVID.

## Argument

As the movant, Defendant bears the burden to establish that he should receive a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). He has not done so.

Although Defendant has exhausted administrative remedies, Defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction. Defendant has also failed to show he is not a danger to any other person or the community or that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.

### I.   Defendant has not identified extraordinary and compelling reasons for a sentence reduction.

A court can grant a sentence reduction under § 3582(c)(1)(A) only if "extraordinary and compelling reasons" justify the reduction and "such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The applicable policy statement, which appears in section 1B1.13 of the Sentencing Guidelines, defines the conditions and circumstances that qualify as "extraordinary and compelling reasons." Defendant has not identified any reason that the applicable policy statement would recognize as extraordinary and compelling.

The governing policy statement defines "extraordinary and compelling reasons" to include specific categories of medical conditions. USSG § 1B1.13, cmt. n.1(A). To state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that the condition falls within one of these categories. *Id.* These categories include a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*.

COVID-19 by itself does not qualify as an extraordinary and compelling reason. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates. Similarly, the governing policy statement looks to serious medical conditions that afflict an individual inmate, not general threats to an entire population. *See* USSG § 1B1.13 cmt. n.1(A); *United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020). To treat COVID-19 as an extraordinary and compelling reason would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine eligibility for sentence reductions and home confinement. In short, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant has not identified any other medical condition that would qualify under the policy statement. Defendant's medical records confirm he has asthma. The CDC recognizes that

people with asthma "*might* be at an increased risk for severe illness from COVID-19." Ctrs. for Disease Control, People with Certain Medical Conditions (July 28, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (emphasis added).[2] But the CDC identified mixed evidence connecting asthma with increased risk from COVID-19. *See* Ctrs. for Disease Control, Scientific Evidence for Conditions that Increase Risk of Severe Illness (September 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html. In addition, Defendant's medical records show that he is receiving appropriate, effective treatment and that his asthma is currently under control and listed as in remission. *See* Ex. B at 11-12, 24, 37 (Medical Records).

Defendant's medical records also confirm he has seizures. The CDC has not identified seizures as putting a person at greater risk for severe illness from COVID-19. *See* Ctrs. for Disease Control, People with Certain Medical Conditions (Aug. 14, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.[3] In addition, Defendant's medical records show that he is receiving appropriate, effective treatment and that the seizures are currently under control. *See* Ex. B, at 10 (Medical Records).

Defendant claims to suffer from a weakened immune system but his medical records do not bear that out. *See* Ex. B (Medical Records).

With regard to his claim of hypertension, defendant's medical records show his blood pressure is fine and do not indicate any hypertension. *Id*. at 26. They do list prior claimed hypertension as being in remission. *Id*. at 37.

---

[2] The CDC has revised its guidance to reflect currently available data available. *Id.* The CDC's guidance lists groups who "*are* at an increased risk" of severe illness from COVID-19 based on their medical conditions and groups who "*might be* at an increased risk" of severe illness from COVID-19 based on their medical conditions. *Id.* (emphasis added).

[3] The CDC has revised its guidance to reflect currently available data available. *Id.* The CDC's guidance lists groups who "*are* at an increased risk" of severe illness from COVID-19 based on their medical conditions and groups who "*might be* at an increased risk" of severe illness from COVID-19 based on their medical conditions. *Id.* (emphasis added).

Therefore, Defendant has not shown any medical condition that would satisfy the governing policy statement's criteria for "extraordinary and compelling reasons."

**Defendant's age does not satisfy the criteria for extraordinary and compelling reasons.**

The governing policy statement recognizes age as an extraordinary and compelling reason for a sentence reduction only when the defendant "(i) is at least 75 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG § 1B1.13 cmt. n.1(B). Defendant does not meet these criteria. He is merely 42 years old and has served only 3 years or 20 percent of his term of imprisonment. Reducing Defendant's sentence based on age therefore would not be consistent with the policy statement and would not be authorized by § 3582.

II. **Defendant has not shown that he is not a danger to the safety of any other person or the community.**

A defendant seeking a sentence reduction must show that a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement, section 1B1.13 of the Sentencing Guidelines, in turn requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Section 3142(g) directs a court to consider factors such as the nature and circumstances of the defendant's offense and the defendant's history and characteristics. 18 U.S.C. § 3142(g).

Defendant has not shown he would not pose a danger if released. Defendant has an admitted sexual attraction to prepubescent females. (PSR ¶13.) He used images and videos of prepubescent children to satisfy himself sexually for 16 years until he was apprehended by the FBI. (PSR ¶12.) Defendant is addicted to child pornography and was trafficking child pornography of prepubescent children to others. (*Id*). He developed an admitted interest in toddler pornography and babies and infants that are tied and bound. (PSR ¶ 13.) When he is at

public places, such as malls, he finds himself attracted to children. *(Id)*. Although he used a wiping program and often deleted child pornography material from his computer, the FBI found almost 4,000 images depicting children as young as infants and toddlers engaged in a variety of graphic sexual acts. (PSR ¶12, 14.)   The defendant would continue to pose a danger to the community if released.

**III.    Defendant has not shown that the sentencing factors in 18 U.S.C. § 3553(a) support a reduced prison term.**

This Court must also consider the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13; *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). At Defendant's sentencing, this Court determined that those factors supported his current sentence of 185 months. (Judgment 2, ECF 66.) Those factors continue to support that sentence instead of the 36-month sentence Defendant seeks.

- **Nature and circumstances of offense, § 3553(a)(1), and seriousness of offense, § 3553(a)(2)(A).** The nature, circumstances, and seriousness of Defendant's offense remain unchanged and reinforce the just nature of this Court's sentence. The defendant spent over 16 years actively trafficking in child sex abuse images of very young children. He is addicted to child pornography and has a strong sexual interest in children that has been reinforced through 16 years of viewing images and videos of young children being sexually abused. (PSR ¶ 10-14.)

- **Defendant's history and characteristics, § 3553(a)(1).** The defendant suffers from Bi-Polar II disorder, anxiety and depression. (PSR ¶ 49.)

- **Need to protect public and deter further crimes, § 3553(a)(2)(B)-(C).** The defendant has not participated in any sex offender treatment programs while in prison. He is currently on a waiting list but has not been able to receive such treatment. *See* Ex. C, (Inmate Psych Treatment).

- **Need to provide medical care, § 3553(a)(2)(D).** No sentence reduction is necessary to provide Defendant with needed medical care. As explained above

> BOP is providing treatment for Defendant's medical conditions which are all well controlled. *See* Ex. B, at 36-38 (Medical Records).

- **Sentencing guidelines and unwarranted sentencing disparities, § 3553(a)(3)-(6).** The reduction Defendant seeks would ignore the sentencing guidelines and result in a sentence dramatically less than the 210-240 month sentence those guidelines recommended. (PSR ¶ 56) By ignoring the guidelines, a significantly reduced sentence would disregard the need to avoid unwarranted sentence disparities among similarly situated defendants. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct.") (cleaned up).

In sum, Defendant has failed to show that the sentencing factors in § 3553(a) support the reduced sentence he seeks.

## IV. This Court lacks authority to direct BOP to place Defendant in home confinement.

This Court should also deny any alternative request for an order directing BOP to place him in home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). And federal statute grants BOP, not courts, the sole authority to determine the place of incarceration. 18 U.S.C. § 3621(b); *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993); *Moore v. U.S. Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973). Section 3582(c)(1)(A) permits a court to reduce prison term when a defendant meets all the

criteria discussed above, but Defendant's request for designation to home confinement does not reduce any prison term.[4]

### V. If this Court reduces Defendant's prison term to time served, it should impose a quarantine period before release.

If this Court disagrees and grants a sentence reduction that results in Defendant's early release, the government requests that the Court's order accommodate the need to quarantine the defendant for a period of at least 14 days to protect public health. To ensure that pre-release quarantine occurs, this Court should advise the parties of its decision while retaining jurisdiction over the motion for 14 days. BOP will then place Defendant in quarantine. If Defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, this Court's sentence-reduction order will then issue. If Defendant instead tests positive during the 14-day period, the government will notify the Court and seek an extension of any release date until Defendant has tested negative and displayed no symptoms for at 14 days.

### Conclusion

For all these reasons, this Court should deny Defendant's motion. Should the Court instead grant the motion, this Court should ensure that its order allows for the 14-day quarantine period described above.

---

[4] If a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). A court imposing a term of supervised release may require a period of "[h]ome detention" as a condition of supervised release if the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). But no sentence reduction is warranted, so this Court need not consider adding any term of supervised release.

**U.S. Response to Sentence-Reduction Motion** 11

                    Respectfully submitted,

                    John F. Bash
                    United States Attorney

By:   */s/ Tracy Thompson*
        Tracy Thompson
        Assistant United States Attorney
        601 NW Loop 410, Suite 600
        San Antonio, TX 78216
        210-384-7154
        210-384-7135
        Tracy.Thompson@usdoj.gov

## Certificate of Service

   I certify that on September 17, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☐  The CM/ECF system will send notification to the following CM/ECF participant(s):

☒  I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

>Mark Anthony Grimes
>FMC Forth Worth
>PO Box 15330
>Ft. Worth, TX 76119-0330

                                     */s/ Tracy Thompson*
                                     Tracy Thompson
                                     Assistant United States Attorney